IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANICE BEASLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO 05-0620-KD-B |
| | ) | |
| WAL-MART STORES EAST, L.P., et al, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the court on the motion for summary judgment filed by defendant

Albert Stallworth, brief and exhibits  (docs. 33, 34), plaintiff's response to the motion and

supporting documents (docs. 40, 41)[1] and defendant's reply (doc. 46).  Upon consideration of the

foregoing, and for the reasons set forth herein, the Court concludes that defendant Stallworth's

motion for summary judgment (doc. 33) is due to be **GRANTED.**

I. Background

At the time relevant to this cause of action, plaintiff was a night shift stock employee at

the Wal-Mart store in Monroeville, Alabama and Albert Stallworth was one of her Shift

Supervisors, the other was Aileen Cork.  Plaintiff alleges that on three occasions over the course

of approximately five months (October 2004 to January 2005) Stallworth made comments to her

which she interpreted as inappropriate sexual harassment and that she rebuffed these comments.

After these incidents, plaintiff was present at a pre-shift meeting with Stallworth and other

---

[1] Defendant Stallworth filed a motion to strike Exhibit 4 to plaintiff's response - the Wal-Mart Red Book Investigation file.  Because the Court has not relied on any part of that exhibit, defendant Stallworth's motion (doc. 45) is **DENIED** as **MOOT**.

workers when she cursed because Stallworth told her she could no longer wear her Walkman

while working. After this meeting, plaintiff reported Stallworth's allegedly inappropriate

comments to Cork. Also, after this meeting, plaintiff alleges that Stallworth reported her cursing

to the Store Manager Alice Plant.[2] Plaintiff alleges that Plant then told LaSandra Darby, an

assistant manager, to fire plaintiff if she admitted to cursing, even though other employees who

cursed at work were not fired. Plaintiff admitted that she had cursed and she was fired. Plaintiff

told Darby about the harassment and Darby reported it to Plant. Plaintiff alleges that Plant told

Darby that plaintiff was mad because she was fired and Plant did not investigate the allegation of

sexual harassment. (Doc. 40).

Plaintiff filed her complaint against Albert Stallworth and Wal-Mart Stores East, L.P. on

October 26, 2005 (Doc. 1). Initially, plaintiff raised four causes of action - discrimination based

upon sexual harassment and a hostile work environment pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, *et seq*, as amended by the Civil Rights Act of 1991, against

Wal-Mart (Claim 1); invasion of privacy against Stallworth and Wal-Mart (Claim II); tort of

outrage against Stallworth and Wal-Mart (Claim III); and negligent supervision and retention

against Wal-Mart (Claim IV). (Doc. 1). In her response to the defendants' motions for summary

judgment, plaintiff withdrew her claims for the tort of outrage and negligent retention. (Doc. 40,

p.22). Therefore, the only claim remaining against Stallworth is plaintiff's claim for invasion of

---

[2] The testimony conflicts as to who told Plant. La Sandra Darby, an Assistant Manager, testified that Stallworth told her that he had reported plaintiff to Plant. (Doc. 41, Exhibit 2, p. 17). However, Stallworth testified that Gail Lett, another Support Manager, overheard the cursing and discussed it with him but it was Lett who told Plant about the incident. (Doc. 34-3, Exhibit B, p. 41, 44). Plant also stated in her declaration that Lett told her about the incident. (Doc. 34, Exhibit C, p. 3). However, for purposes of this motion for summary judgment as to Stallworth, the conflict is not relevant.

privacy.  (Id., Doc. 1)

II. Findings of Fact[3]

      1.  Plaintiff was trained on Wal-Mart's sexual harassment policy when she was hired and

she passed the test on her understanding of the policy. (Doc. 34, Exhibit D, plaintiff's deposition,

p. 19-2).  Plaintiff understood that she should report sexual harassment or a hostile work

environment to a supervisor, store manager or personnel manager. (Id. p. 20-21, 24-25).  Plaintiff

acknowledged that a copy of Wal-Mart's policy was posted by the time clock. (Id. p. 22).

      2.  Plaintiff described the first incident as follows:

> [T]he first conversation we had . . .  was . . . in the food section. . . .   [I]t was
> about strip poker . . .  it started out with me and Carmichael . . . talking about
> [cards and playing "21"].

(Doc. 34, Exhibit B, p. 49, 54-55).

> And [Stallworth] had came over there, and he had got in the conversation . . . he
> said . . . he had played poker.  Well, strip poker with some women, and he had
> them beat – they had beat him down to his drawers in strip poker.  And he had
> asked me did  . . . – he said y'all play poker?  And I think Carmichael's comment
> was he knew how to play it, and I told him, I said, I didn't know how to play it.
> And I said I like to play deuce are wilds.  And he was like – he said I could teach
> you how to play strip poker, if you want.  And I was like, no, I said I don't play . .
> . strip poker.  He said I'm going to teach you how to play it.  And I said no thank
> you.  I told him I didn't want him to teach me how to play it.

(Id., p. 49-50).  After plaintiff told Stallworth that she did not want him to teach her how to play

strip poker, he walked off and she and Carmichael "struck up another conversation, and we went

to putting . . .  the groceries on up." (Id., p. 58).  This incident occurred shortly after plaintiff

began work at the Monroeville store in October 2004. (Id., p. 63).

      3.  In regard to the second comment, plaintiff testified as follows:

---

[3] Only those facts relevant to plaintiff's claim of invasion of privacy are set forth herein.

[a]round Christmas holidays and I was over there in health and beauty aid.  And they had the candy . . . marked down.  And he had went over there, and he had picked up some Hershey Kisses.  And he had came over there and he said, . . . you eat Hershey Kisses? And I said . . . yeah, I like Hershey Kisses.  And then he was like they got – they got a whole bunch of candy over there marked down. And he said – and he was talking about they're real cheap, he said like 50 cent a bag.  And I said, they do.  I said what kind of Hershey Kisses they got?  And he said the mint kind.  I said . . . I don't like those, I don't eat those kind of Hershey Kisses.  I said I like the Hershey Kisses with the nuts in it.  And his comment was, after I said that, he said you know you like yourself some nuts.

(Doc. 34, Exhibit B, p. 51; Doc. 38, Exhibit A, p. 65).

Plaintiff also testified as follows:

Q. Okay. So what is it he said on this occasion that you thought was inappropriate?
A.  He said I love myself some nuts.  He said you know you love yourself some nuts.
Q.  What about that was offensive?
A. I mean, it depends on how you look at it.  I mean, he said – it's just nuts.  I mean, I said I don't  – when he said it, I said no, not nuts.  I don't like no – just no any nuts, you know, like that.  I said if its nuts, you know, nuts you eat, yeah, I like Hershey Kisses with the nuts in it.
Q. And prior to him making this, you know you like yourself some nuts comment, you had already told him that you didn't like mint Hershey's Kisses, you preferred Hershey's Kisses with nuts.
A. Yes, sir.
Q. Well, did you ask Mr. Stallworth what he meant by the you know you like yourself some nuts comment?
A. No, sir.
Q. Well, what did you believe he meant by that comment?
A. Like, I thought he meant like, men's nuts.
Q.  Did Mr. Stallworth say that's what he was referring to?
A. No, sir.

(Id., p. 65-66).  Plaintiff told Stallworth that she did not like nuts and did not eat any kind of nuts

and "he just walked off". (Id., p. 67).   Plaintiff returned to her work, completed her shift, and did

not report the incident. (Id., p. 67).

4.  The third incident occurred in January 2005, while plaintiff and some co-workers

were standing in the electronics department during a break. (Doc. 34, Exhibit B, p. 51, 76)

Plaintiff testified that Stallworth passed by and

> we was like doing something, and he was, like - - he asked me, he said you got a
> boyfriend?  And I said yeah.  And then he said - - he said something else.  I can't
> remember exactly what he said, and I said - - my comment was to Albert.  I said,
> well Albert, I said, well – I said can go on and kill that right there.  I said there's
> no chance that me and you could ever have anything because I said you old
> enough to be my daddy.  And I said I don't date men that's old enough to be my
> daddy.  And it was like, when I said that, he had like – it was like he got mad.  He
> walked off and went over toward the food section and then Ms. Debra said
> (INDICATING) just like that.  And then – so we were like still over there
> standing up, and he was, like, didn't I tell y'all to go to work.  And so we had
> scattered out and went back to our sections and went back to working.

 (Id., p. 52).   Plaintiff testified that after she answered that she had a boyfriend, Stallworth "was

fixing to say something else" but she "just said, Albert I said I can go on and kill that, just like

that. . . . I said I don't date men that's old enough to be my daddy.  And I said you about the age

of my daddy." (Id., p. 74-75).  Plaintiff testified that during this discussion, Stallworth did not

ask her out and that she "just didn't give him a chance to ask whatever he was fixing to ask."

(Id., p. 76-77).  Plaintiff testified that following this conversation, Stallworth did not say

anything that was offensive to her. (Id., p. 77).

5.  Plaintiff testified that Stallworth never touched her at any point during her

employment. (Doc. 34, Exhibit D, p. 48).

6.  Plaintiff testified that Stallworth never invited her to dinner, never asked her for sex,

never asked her for a date, and never asked questions about her private sex life or about what she

and her boyfriend did in the privacy of her or his home. (Id., p. 57-58).

7.  Plaintiff testified that she never told any manager or personnel manager about these

incidents. (Doc. 34, Exhibit D, p. 88-89).  Plaintiff testified that she told her other Shift

Supervisor Cork about these three incidents, "right after the incident where [she] cursed in the meeting". (Doc. 34, Exhibit D, p. 82).  Plaintiff testified that Cork advised her to tell James Pipes (a regional manager), and that Cork said she would get the phone number for plaintiff. (Doc. 34, Exhibit D, p. 88-89).  Plaintiff admitted that Cork never gave her the number and that she did not pursue the matter any further with Cork or any manager. (Id.).

      8.  Plaintiff testified that shortly after the boyfriend question incident, plaintiff used the curse word "shit" at a pre-shift meeting conducted by Stallworth. (Doc. 34, Exhibit D, p. 124-125).  Plaintiff testified that Stallworth told her that she could no longer wear her Walkman on the floor and she said "well, shit, what you going to take next." (Id., p. 124).  Plaintiff testified that Stallworth responded by saying that she still could not take the Walkman on the floor. (Id., p. 125).  Plaintiff testified that previously the employees had been told they could not have their cell phones while working. (Doc. 41, Exhibit 1, p. 123).  Plaintiff testified that Stallworth was the only supervisor to make an issue about her Walkman. (Doc. 34, Exhibit D, p. 123-124).

      9.  Plaintiff testified that when she met with LaSandra Darby, the assistant manager who fired plaintiff for cursing, she told Darby that she felt "like if [she] had of just gave Albert some, you know, some play that [she] and him could have had something[,] [he] wouldn't have never come to [Darby] with [plaintiff] saying the word 'shit'". (Doc. 41, Exhibit A, p. 120).  Plaintiff testified that cursing occurred every night, on the floor and in the break room, among the night shift workers.  (Id., p. 120-121).  Plaintiff then told Darby that Stallworth liked her and that plaintiff knew this because of the comments he had made. (Id., p. 121).  Plaintiff then told Darby about the three incidents. (Id., p. 121).  Darby offered to stop the exit interview and report this information to Plant, the store manager, but plaintiff declined.  (Doc. 34, Exhibit E, p. 18-19,

42).  Darby then completed the exit interview and indicated that the reason for termination was

gross misconduct. (Id., p. 48).

III.  Conclusions of Law

A. Jurisdiction and Venue

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331,

1343(a)(3), and 1343(a)(4); 42 U.S.C. § 2000e, et seq; and 28 U.S.C. §§ 1367, 2201, and 2202.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

B. Summary Judgment Standard

Summary judgment should be granted only if "there is no issue as to any material fact

and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

party seeking summary judgment bears "the initial burden to show the district court, by reference

to materials on file, that there are no genuine issues of material fact that should be decided at

trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party

has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a

genuine issue of material fact. Id.  "If the nonmoving party fails to makes 'a sufficient showing

on an essential element of her case with respect to which she has the burden of proof, 'the

moving party is entitled to summary judgment." Id. (quoting Celotex Corp., v. Catrett, 477 U.S.

317 (1986) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden,

the court must stop short of weighing the evidence and making credibility determination of the

truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999

(11th Cir. 1992) (internal citations and quotations omitted).  However, the mere existence of any

factual dispute will not automatically necessitate denial of a motion for summary judgment;

rather, only factual disputes that are material preclude entry of summary judgment. Lofton v.

Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004).

The Eleventh Circuit has expressly rejected the notion that summary judgment should be

seldom used in employment discrimination cases because they involve issues of motivation and

intent.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004).  Rather, "the

summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to

be placed on either side of the scale." Id. at 1086 (citation omitted).

C. Plaintiff's Claim II - Invasion of Privacy

Argument

Plaintiff alleges that Stallworth's conduct constitutes an invasion of privacy.  She

contends that Stallworth made comments to her on three occasions - the "strip poker" incident,

the "Hershey Kisses" incident, and the "boyfriend question" incident.[4]  Plaintiff maintains that

Stallworth's comments rise to the level of invasion of privacy.  (Doc. 40)

Defendant argues that the undisputed facts establish that he never touched plaintiff, never

asked her for sex, never inquired into her private sex life, and never asked what she and her

boyfriend did in private and that his alleged comments on the three occasions identified were not

---

[4]  In her response to the motion for summary judgment plaintiff states that as to her
invasion of privacy claims, she adopts the "argument and evidence presented on these points in
discussion of plaintiff's quid pro quo and hostile environment claims. (Doc. 40, n. 4).  She also
argues that a " jury could reasonably determine from the evidence in the record that defendant
intruded into plaintiff's physical solitude or seclusion when he touched her in the manner
described by Ms. Richardson, thus, invading her right to privacy." (Id.)  This argument is in error
and not supported by the facts because plaintiff testified that Stallworth never touched her. (Doc.
34, Exhibit D, p. 48).

egregious and do not rise to the extreme degree necessary to meet the elements of this cause of action.  Defendant also argues that plaintiff has not established that she experienced outrage, mental suffering, shame, or humiliation to support her claim.  (Docs. 34, 46).

Analysis

"It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage." Stevenson v. Precision Standard, Inc., 762 So.2d 820, 825 n.6 (Ala. 1999) (citations omitted); Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp.2d 1314, 1320 (N.D. Ala., 2002) citing Machen v. Childersburg Bancorporation, Inc., 761 So.2d 981, 983 n.1 (2000);  Ex parte Atmore Community Hosp., 719 So.2d 1190 (Ala.1998); Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885 (Ala.1995); Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993); Potts v. BE & K Constr. Co., 604 So.2d 398 (Ala.1992).

Invasion of privacy involves one of four acts: (1) intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates ordinary decencies; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; or (4) the appropriation of some element of the plaintiff's personality for a commercial use. See Phillips v. Smalley Maintenance Serv., Inc., 435 So.2d 705, 708 (Ala.1983); Armstrong v. Standard Furniture, 2006 WL 2503548, *3-4 (11th Cir. 2006) (slip copy) (not selected for publication).[5]  Although there is no separate cause of action for sexual harassment under Alabama law, "[t]he Alabama Supreme Court has

---

[5]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." U.S. Ct. of App. 11th Cir. Rule 36-2.

held that severe sexual harassment can be an invasion of privacy." <u>Armstrong</u>, 2006 WL

2503548 at *3 citing <u>Busby v. Truswal Sys. Corp.</u>, 551 So.2d 322, 324 (Ala.1989).  Plaintiff's

claim of sexual harassment falls under the first act, since she fails to make any factual allegations

in support of the other three acts. <u>See</u>  <u>Phillips</u>, 435 So.2d at 708 (holding that "intrusion upon

the plaintiff's physical solitude or seclusion" is one of four acts that constitute an invasion of

privacy).

        To prove an invasion of privacy underpinned by alleged acts of sexual harassment, the

plaintiff must show  "(1) that the matters intruded into are of a private nature; and (2) that the

intrusion would be so offensive or objectionable that a reasonable person subjected to it would

experience outrage, mental suffering, shame, or humiliation." <u>Ex parte Atmore Community.</u>

<u>Hospital</u>, 719 So.2d at 1194;  <u>Busby</u>, 551 So.2d at 323 ("[T]here must be something in the nature

of prying or intrusion" and "the intrusion must be something which would be offensive or

objectionable to a reasonable person.");  <u>McIssac v. WZEW-FM Corp.,</u> 495 So.2d 649, 651

(Ala.1986); <u>Logan v. Sears, Roebuck & Co.</u>, 466 So.2d 121, 124 (Ala.1985) (the conduct must

be "such that would cause mental suffering, shame, or humiliation to a person of ordinary

sensibilities.").

        The "wrongful intrusion" prong of the tort of invasion of privacy has been defined as the

"intentional interference with another's interest in solitude or seclusion, either as to his person or

[as] to his private affairs or concerns." W. Prosser & W. Keeton, <u>The Law of Torts</u>, p. 851 (5th

ed.1984).  It is not necessary that information about the victim's private concerns be

communicated to a third party or that the wrongdoer invade the victim's physical privacy.

<u>Phillips</u>, 435 So.2d at 709.  One may invade another's privacy through either an intrusion upon a

physical space or by an invasion of one's "emotional sanctum"; the law prohibits a wrongful

intrusion into either of these areas of privacy. Id. at 711.  In Busby, the Alabama Supreme Court

noted that marriage and sexual concerns are entitled to privacy protection. 551 So.2d at 323.

The Alabama Court has held that extensive inquiries into one's sex life may be

actionable. See Phillips, 435 So.2d 705 (finding invasion of privacy and an extensive inquiry

where the employer questioned a female employee two or three times a week for three months

behind "locked doors" about the employee's sexual experiences, made coercive sexual advances,

and the employee suffered severe mental trauma).  However, plaintiff has failed to present any

evidence that Stallworth ever questioned her about her private sex life.

The Alabama Court has also held that lewd comments may invade an employee's privacy

but in combination with other behavior which is lacking in this case. Ex parte Atmore

Community Hospital, 719 So.2d at 1194 (finding substantial evidence that defendant committed

invasion of privacy where he made several lewd comments, asked plaintiff to meet him outside

of work hours for other than business purposes, and looked up plaintiff's skirt on more than one

occasion).  There is no evidence that Stallworth explicitly asked plaintiff for a date or observed

her in any manner which she interpreted as sexual. See also Brassfield v. Jack McLendon

Furniture, Inc., 953 F.Supp. 1438 (M.D. Ala.1996) (describing Alabama Supreme Court

precedent on invasion of privacy as a spectrum ranging from extreme and outrageous sexual

harassment to questioning over a three month period about an employee's sex life combined with

sexual advances).

Moreover, the Alabama court has held that even asking a co-employee for a date in

combination with making sexual propositions does not constitute an invasion of privacy.

McIsaac, 495 So.2d at 649 (insufficient evidence to constitute a claim of invasion of privacy where president of the company told a female employee about an affair that he had, asked the employee to have dinner and to be available when he was in town, tried to kiss the employee, engaged in lurks or innuendoes, touched her arm and tried to have her to fired). In the present case, plaintiff has not presented any evidence that Stallworth ever asked her for a date or made a sexual proposition. Instead the evidence supports that on three occasions he made comments which she interpreted as sexual harassment.  This conduct is more akin to the facts in Armstrong, 2006 WL 2503548, in which the court held that the plaintiffs had not made out a case for invasion of privacy against defendant Caskey where "Armstrong testified that Caskey: (1) once stated that he would handcuff her to a bed; and (2) once commented on her underwear when it was visible.  Sims testified that Caskey: (1) asked Sims out after work; (2) asked Sims to give him Spanish lessons; and (3) asked Sims to join a church volleyball team." Id. at *3-4.[6]

According to plaintiff, Stallworth offered to teach her how to play strip poker, made a comment that she liked nuts which she interpreted to mean "men's nuts", and in front of several co-workers, asked her if she had a boyfriend - a question to which she responded affirmatively and also interpreted as a precursor to asking her for a date.  Plaintiff has not presented any evidence that she was traumatized or experienced mental suffering because of these comments.

---

[6]  However, the Eleventh Circuit held that because Armstrong had shown that defendant Denson "regularly (1) made sexual comments in the workplace; (2) stated 'daily' that he wanted to have sex with Armstrong; (3) groped Armstrong while she was working; and (4) regularly inquired whether Armstrong was menstruating because he wanted some 'cat'" and because Sims had "testified that Denson would (1) constantly talk about sex; (2) regularly brush up against her; (3) comment about her legs; and (4) come up to Sims "licking his tongue out" at her", a "jury could find that Denson intruded upon Armstrong's and Sims's sex lives in an offensive manner and, therefore, invaded their right to privacy."). Armstrong, 2006 WL 2503548 at *4.

After each comment, plaintiff testified that she returned to her work, completed her tasks, and continued to return to the workplace. (Id., p. 52, 58; 67).

Accepting plaintiff's deposition testimony as true, the court finds that plaintiff has not established an invasion of privacy because no reasonable jury could find that Stallworth's three comments invaded plaintiff's privacy.  Accordingly, defendants' motion for summary judgment as to Claim II of plaintiff's complaint alleging invasion of privacy is **GRANTED**.

**DONE** and **ORDERED** this the 16th day of November, 2006.


**s / Kristi K. DuBose**
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**